.

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SCENTSY, INC.,<br><br>        Plaintiff,<br><br>        v.<br><br>BLUE CROSS OF IDAHO HEALTH<br>SERVICE, INC.,<br><br>        Defendant. | Case No. 1:23-cv-00552-AKB<br><br>**MEMORANDUM DECISION<br>AND ORDER RE MOTION TO<br>COMPEL ARBITRATION, OR IN<br>THE ALTERNATIVE PARTIALLY<br>DISMISS AND STAY** |

Pending before the Court is Defendant Blue Cross of Idaho Health Service, Inc.'s Motion to Compel Arbitration, or in the Alternative to Partially Dismiss and Stay. (Dkt. 8). Having reviewed the record and the parties' submissions, the Court finds that the facts and legal argument are adequately presented and that oral argument would not significantly aid its decision-making process, and it decides the motion on the parties' briefing. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B); *see also* Fed. R. Civ. P. 78(b) ("By rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings."). The Court denies Blue Cross's motion to compel arbitration and denies in part and grants in part its motion to dismiss.

## I.  BACKGROUND

Plaintiff Scentsy, Inc., alleges it is "the sponsor and a fiduciary of a self-insured and self-funded health care benefit plan called the Scentsy, Inc., Group Health Plan ("the Plan")." (Dkt. 1 at ¶ 2). Blue Cross is the Plan's administrator and its excess-loss insurer. (*Id.* at ¶ 7). Beginning in 2019, Blue Cross and Scentsy entered into two types of contracts governing their relationship:

(1) administrative service agreements ("ASAs") related to Blue Cross's administrator role, and (2) excess loss contracts related to Blue Cross's role as the Plan's insurer for losses in excess of $200,000. (*Id.* at ¶¶ 10-11). In practice, Scentsy alleges these contracts provided that after a plan participant received medical services, the service provider would bill Blue Cross; Blue Cross would review, decide, and adjust the claim for coverage; and then, Blue Cross would debit the Plan's account to pay the claim, unless the amount of the claim exceeded $200,000. (*Id.* at ¶ 13). In that event, Blue Cross would pay the amount exceeding $200,000. (*Id.*). Blue Cross's obligation to pay amounts exceeding $200,000, however, were limited to services rendered, billed, and paid within a fixed fifteen-month period. (*Id.* at ¶ 14).

In February 2022, a Plan participant (hereafter "Participant") "became seriously ill" and "ultimately incurred millions of dollars' worth of medical bills." (*Id.* at ¶ 22). The Participant's first set of medical claims were for services provided between February 20, 2022, and March 21, 2022. (*Id.*). The amount billed on those claims exceeded $200,000, and Blue Cross paid that excess amount. (*Id.*).

The Participant's second set of medical claims were for services provided between March 22, 2022, and April 20, 2022 (hereafter "uncovered claims"). (*Id.* at ¶ 23). Blue Cross did not process these uncovered claims for payment, however, until October 2022. (*Id.*). As a result, the uncovered claims were outside the fifteen-month fixed period for excess coverage, and Blue Cross declined to pay them. (*Id.*). Meanwhile, if Blue Cross had processed the uncovered claims earlier, it would have been required to cover the excess loss. (*Id.*).

During the timeframes when the Participant received medical services from February 20 until May 21, 2022, and when Blue Cross adjusted the Participant's claims and uncovered claims,

the parties had two, successive ASAs. The 2020 ASA was effective from May 1, 2020, through April 30, 2022. (Dkt. 1-4 at p. 30) (showing effective dates of May 1, 2020, through April 30, 2021); (Dkt. 1-5 at p. 8) (showing amended effective dates of May 1, 2021, through April 30, 2022). Thereafter, the 2022 ASA was effective from May 1, 2022, through April 30, 2023. (Dkt. 8-2 at p. 34). Also, in effect during part of the relevant period was the 2021 Excess Loss Contract governing Blue Cross's obligation to insure excess losses. (Dkt. 1-2 at p. 2). It was effective from May 1, 2021, through April 30, 2022, which spanned the entire period when the Participant received medical services.

Importantly, these agreements provide different avenues for the parties to resolve their disputes. The Excess Loss Contract provides that "any claim or lawsuit arising from or relating to this Agreement shall be filed and maintained in a court of competent jurisdiction in Ada County, Idaho." (*Id.* at p. 7). Likewise, the 2020 ASA provides the parties will litigate their disputes in court, stating that "any claim or lawsuit arising from or relating to this Agreement shall be filed and maintained in a court of competent jurisdiction in Ada County, Idaho."  (Dkt. 1-4 at p. 11) (Art. VI, ¶ A). Meanwhile, the 2022 ASA provides for arbitration in lieu of litigation, stating that "either party shall have the right to commence arbitration if the [parties] have not been successful in resolving their disputes" and that "all disputes shall be resolved by binding arbitration submitted to JAMS under or in accordance with its then-prevailing Comprehensive Arbitration Rules." (Dkt. 8-2 at p. 17).

In September 2023, Scentsy initiated an arbitration proceeding under the parties' 2019 ASA to challenge Blue Cross's refusal to pay the Participant's uncovered claims; when initiating the arbitration, Scentsy mistakenly believed the 2019 ASA was the applicable ASA. (Dkt. 1-3 at

p. 2; Dkt. 12 at p. 3). Blue Cross responded that the 2019 ASA was not the governing contract. (Dkt. 8-1 at p. 6). This response prompted Scentsy to stay the arbitration and file this action against Blue Cross. (Dkt. 1; Dkt. 8-1 at p. 6).

In this action, Scentsy alleges that Blue Cross is obligated to pay the Participant's uncovered claims and that Blue Cross engaged in a variety of conduct in its Plan administrator role to avoid covering this excess loss. (Dkt. 1 at ¶¶ 22-35). Scentsy further alleges this conduct violated the 2020 ASA and the 2021 Excess Loss Contract. (*See, e.g.*, *id.* at ¶¶ 39, 78; Dkt. 1-2 at p. 7). In its complaint, Scentsy alleges claims for breach of fiduciary duty, breach of contract, breach of covenant of good faith and fair dealing, unjust enrichment, and insurance bad faith.  (Dkt. 1 at ¶¶ 40-110).

In response, Blue Cross filed the pending motion to compel arbitration. (Dkt. 8). It asserts the 2022 ASA governs the parties' dispute and requires arbitration. (*Id.*). Alternatively, Blue Cross moves to dismiss Scentsy's claim under § 502(a)(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132(a)(3), and its state law claims.

## II.  LEGAL STANDARD

### A.    Motion to Compel Arbitration

The Federal Arbitration Act (FAA) controls the enforcement of arbitration clauses. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010). Section 2 of the FAA provides an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Further, the FAA enunciates a strong federal policy favoring arbitration and requires courts to "rigorously enforce

agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985); *accord Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 505-06 (2018).

Where an arbitration clause exists within a contract, "there is a presumption of arbitrability." *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 650 (1986). "The court's role under the [FAA] is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000); *accord Munro v. Univ. of S. California*, 896 F.3d 1088, 1091 (9th Cir. 2018). "[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91 (2000).

A summary judgment standard applies to resolve a motion to compel arbitration. *Burch-Lucich v. Lucich*, No. 1:13-cv-00218-BLW, 2013 WL 5876317, at *4 (D. Idaho Oct. 31, 2013). Under this standard, the Court treats the facts as it would when ruling on a motion for summary judgment by construing all the facts and the reasonable inferences from those facts in a light most favorable to the nonmoving party. *Id.*; *see also Hutchins v. DirecTV Customer Serv., Inc.,* Case No. 1:11-cv-422-REB, 2012 WL 1161424, at *4 (D. Idaho Apr. 6, 2012). (internal quotation marks and citation omitted); *see also Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008) ("[A] denial of a motion to compel arbitration has the same effect as a grant of partial summary judgment denying arbitration.").

**B.      Rule 12(b)(6) Motion to Dismiss**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a motion to dismiss for failure to state a claim on which relief can be granted tests the legal sufficiency of a complaint. *Navarro*

*v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In assessing dismissal of claims pursuant to Rule 12(b)(6), the Court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008); *accord Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F.4th 885, 889 (9th Cir. 2021).

Generally, a district court may not consider any materials beyond the complaint when ruling on a Rule 12(b)(6) motion. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1989). If the court considers evidence outside the pleadings, it must convert a Rule 12(b)(6) motion into a motion for summary judgment under Rule 56. "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

### III.  ANALYSIS

#### A.    Motion to Compel Arbitration

The parties disagree whether Scentsy must arbitrate its dispute with Blue Cross. Scentsy relies on the 2020 ASA and the 2021 Excess Loss Contract, neither of which provides for arbitration, to argue it is not required to arbitrate but rather may litigate the dispute in federal court. Meanwhile, Blue Cross relies on the 2022 ASA, which provides the parties shall arbitrate all disputes. As Blue Cross states, "the singular critical inquiry is whether there is an agreement to arbitrate." (Dkt. 8-1 at p. 10).

1.      **The Court, not an Arbitrator, Determines Which Contract Controls**

The Supreme Court recently noted in *Coinbase, Inc. v. Suski*,144 S. Ct. 1186, 1190 (2024), that it has "long held that disputes are subject to arbitration if, and only if, the parties actually agreed to arbitrate those disputes." In *Coinbase*, as in this case, "[t]he parties executed two contracts," one containing an arbitration provision and the other containing a forum selection clause for state court. *Id.* Before the Court resolved which contract controlled, it concluded that "a court needs to decide what the parties have agreed—*i.e.*, which contract controls." *Id.*

Initially, Blue Cross asserted inconsistent arguments regarding whether this Court or an arbitrator should decide which contract controls in this case. For example, in its opening brief, Blue Cross argued that "the parties disagree only as to which iteration of the yearly renewed [ASA] applies, which is a question that is properly addressed and settled in the JAMS arbitration." (Dkt. 8-1 at pp. 2-3; *see also id* at p. 3 n.2) ("[T]he threshold question of which contract applies is one for the arbitrator to decide."). At the same time, however, it argued "this Court [should] adhere to long-standing precedent and enforce the [p]arties' agreement to arbitrate." (*Id.* at p. 3). Following supplemental briefing after *Coinbase* issued, Blue Cross now agrees this Court should determine which contract controls in this case, expressly acknowledging that "this Court can determine whether the 2022 ASA supersedes any contrary provision in the earlier agreements." (Dkt. 18 at p. 2).

Determining which contract is controlling in this case requires an analysis of which contract—the 2020 ASA or the 2022 ASA—governs the parties' rights and obligations regarding the Participant's uncovered claims. Although Blue Cross urges the Court to conclude the parties must arbitrate because Scentsy initiated an arbitration with JAMS based on its mistaken belief the

2019 ASA was the applicable contract, both parties now agree the 2019 ASA does not govern the parties' dispute. Further, Blue Cross fails to cite any authority or even to identify a legal theory—such as contractual amendment, waiver, or estoppel—that requires the Court to compel Scentsy to arbitrate based on its initial mistaken belief the 2019 ASA governed the parties' dispute. Absent a legal theory and supporting authority that Scentsy's mistake revokes or overrides the parties' written agreements, the Court declines to conclude Scentsy's mistaken initiation of an arbitration under an inapplicable contract now requires arbitration.

### 2. The 2020 ASA and the 2021 Excess Loss Contract Control

The crux of Scentsy's complaint is that Blue Cross delayed adjusting and paying the Participant's uncovered claims to avoid paying an excess loss. Scentsy argues the controlling contracts are the 2021 Excess Loss Contract and the 2020 ASA. Although Scentsy acknowledges "much of the claim-processing time" for the uncovered claims occurred after the 2020 ASA terminated, it argues the 2020 ASA provides "specific terms for what happens when services are provided during its lifespan but the paperwork is not provided until after termination" under a provision entitled "Run-out of Claims Services" ("run-out provision") (Dkt. 12 at p. 7). This run-out provision provides that:

> If [the 2020 ASA] is terminated by mutual agreement[, Blue Cross] shall, for a period of twelve (12) months after termination ("Run-out Period"), process Benefits Claims under the [Plan] which are received by [Blue Cross] during the Run-out Period but are for Covered Services rendered prior to the date of termination. Except for the run-out of claims services expressly stated in this paragraph, after termination of this Agreement all other obligations of [Blue Cross] to the Plan Sponsor shall cease.

(Dkt. 1-4 at pp. 6-7). According to Scentsy, this run-out provision means "a claim will be governed by the ASA in place at the date of the service, not when processed or paid." (Dkt. 12 at p. 8). In

other words, Scentsy's position is that the 2020 ASA applies to the uncovered claims for services provided from March 22 through April 20, 2022—despite the 2020 ASA's termination on April 30, 2022[1]—because the services underlying the uncovered claims occurred during the 2020 ASA's pendency, and under the run-out provision, Blue Cross adjusted those claims within twelve months.

Blue Cross counters that the 2022 ASA superseded the 2020 ASA because the 2022 ASA contains an "Entire Agreement" clause. (Dkt. 8-1 at p. 4). This provision states that the 2022 ASA "constitutes the complete and exclusive contract between the parties and supersedes any and all prior and contemporaneous oral or written communications or proposals not expressly included herein." (Dkt. 8-2 at p. 28). Blue Cross asserts this clause "supersedes and nullifies" the run-out provision in the 2020 ASA on which Scentsy relies. (Dkt. 16 at p. 7). As Blue Cross also notes, however, the "Entire Agreement" clause "is a classic merger clause."

Blue Cross correctly characterizes the clause as a merger clause, but it misconstrues a merger clause's purpose. A written contract containing a merger clause means the contract is complete on its face. *Howard v. Perry*, 106 P.3d 465, 468 (Idaho 2005). The purpose of a merger clause is to prevent a party from relying on oral evidence to dispute the contract's terms. "If a contract contains a merger clause, it is an integrated agreement for purposes of the parol evidence rule," and extrinsic evidence may not be used to determine whether a written and integrated contract is based on terms other than those contained in the contract. *AED, Inc. v. KDC Invs., LLC*,

---

[1]      Although the 2020 ASA was originally effective from May 1, 2020, until April 30, 2021, the parties amended it to be effective through April 30, 2022. (Dkt. 1-5 at p. 8).

307 P.3d 176, 182 (Idaho 2013). Otherwise, "the parties [would be required] to list in the contract everything upon which they had not agreed and hope that such list covers every possible prior and contemporaneous agreement that could later be alleged." *Howard*, 106 P.3d at 468; *see also Read v. Teton Springs Golf & Casting Club, LLC*, No. CV 08-CV-00099, 2011 WL 1224073, at *8 (D. Idaho Feb. 16, 2011), *report and recommendation adopted*, No. CV08-099-E-EJL-REB, 2011 WL 1223426 (D. Idaho Mar. 28, 2011).

The plain language of the 2022 ASA's Entire Agreement clause supports the conclusion that it is a classic merger clause. Notably, the express language of that clause provides the 2022 ASA "supersedes any and all prior and contemporaneous oral or written *communications or proposals*." (Dkt. 8-2 at p. 28) (emphasis added). This language does not, however, supersede the parties' prior *agreements*, and Blue Cross does not cite any authority in support of that proposition.

Blue Cross also argues the 2022 ASA controls because its "Dispute Resolution Process" clause states "all disputes which **may arise under or in connection** with [the 2022 ASA], whether arising before or after the expiration of the [2022 Agreement], shall be submitted to the alternate resolution dispute process." (Dkt. 8-2 at p. 17) (emphasis added). This clause's plain language, however, is limited to disputes arising under or in connection with the 2022 ASA. Whether the parties' dispute over the uncovered claims arises under or in connection with the 2022 ASA, however, is precisely the question the Court must resolve. In other words, this clause begs the question of whether that 2022 ASA governs the parties' dispute about the uncovered claims. Those claims either arose under or are made in connection with 2022 ASA, or alternatively, they arose under or are made in connection with the 2020 ASA. The 2022 ASA's "Dispute Resolution Process" provision does not resolve that issue.

**MEMORANDUM DECISION AND ORDER RE MOTION TO COMPEL ARBITRATION, OR IN THE ALTERNATIVE PARTIALLY DISMISS AND STAY - 10**

For these reasons, the Court concludes the 2020 ASA governs the parties' dispute regarding which party is obligated to pay for the Participant's uncovered claims for the medical services provided between March 22 and April 20, 2022. Although Blue Cross reviewed and adjusted these claims in October 2022—after the 2020 ASA's termination on April 30, 2022—the 2020 ASA's run-out provision required Blue Cross to process the uncovered claims under the 2020 ASA. Accordingly, the Court concludes the 2020 ASA controls the parties' dispute, and that agreement does not require the parties to arbitrate their dispute.

Moreover, Blue Cross does not challenge Scentsy's allegations or arguments that the 2021 Excess Loss Contract applies to the uncovered claims. Like the 2020 ASA, the 2021 Excess Loss Contract does not contain an arbitration provision. Rather, it provides "[a]ny claim or lawsuit arising from or relating to this Agreement shall be filed and maintained in a court of competent jurisdiction in Ada County, Idaho." (Dkt. 1-2 at p. 7). This agreement provides more support for the conclusion Scentsy is not required to arbitrate this dispute. Accordingly, the Court denies Blue Cross's motion to compel arbitration.

**B.      Rule 12(b)(6) Motion to Dismiss**

Blue Cross moves to dismiss certain claims under Rule 12(b)(6). (Dkt. 8-1 at p. 11). Specifically, Blue Cross argues that Scentsy cannot assert breach of fiduciary duty under both § 1132(a)(2) and § 1132(a)(3) of ERISA; ERISA preempts Scentsy's state law claims; and Scentsy's unjust enrichment claim fails as a matter of law. (Dkt. 8-1 at pp. 11-13). In response, Scentsy broadly argues Rule 8 of the Federal Rules of Civil Procedure permits Scentsy to plead in the alternative. (Dkt. 12 at pp. 15-17).

**1.      Simultaneous Claims Under § 1132(a)(2) and § 1132(a)(3)**

Blue Cross moves to dismiss Scentsy's equitable claim under § 1132(a)(3). Section 1132(a)(3) provides a fiduciary may bring a civil action for injunctive or "other appropriate equitable relief." 29 U.S.C. § 1132(a)(3). Meanwhile, § 1132(a)(2) provides a fiduciary may bring a civil action "for appropriate relief under [§] 1109." 29 U.S.C. § 1132(a)(2). In turn, § 1109 provides for liability for a breach of fiduciary duty and contemplates money damages. 29 U.S.C. §§ 1109, 1132(a)(2).

Relying on § 1332(a)(2), Scentsy alleges Blue Cross breached its fiduciary duty in numerous ways and requests money damages. (Dkt. 1 at ¶¶ 59-60). Alternatively, Scentsy alleges these exact same fiduciary duty breaches under § 1132(a)(3), alleges Blue Cross "should either pay damages or hold the funds it took in violation of its fiduciary duty *in constructive trust* for Scentsy and/or the Plan," and otherwise requests "appropriate equitable relief." (*Id.* at ¶¶ 71, 72, 74) (emphasis added).

Blue Cross argues Scentsy cannot maintain this latter equitable claim under § 1132(a)(3) where an adequate remedy is available under a different ERISA provision. (Dkt. 8-1 at p. 11). In support, it relies on *Wise v. Verizon Commc'ns, Inc.*, 600 F.3d 1180 (9th Cir. 2010). In that case, the plan participant sought an award of benefits and removal of the fiduciary under both § 1132(a)(2) and § 1132(a)(3). The Ninth Circuit noted § 1132(a)(3) "is a 'catchall' or 'safety net' designed to offer appropriate equitable relief for injuries caused by violations that § 1132 does not elsewhere adequately remedy." *Wise*, 600 F.3d at 1190 (brackets and quotation marks omitted). Because § 1132(a)(2) provided both for the removal of the fiduciary and for an award of benefits, the Ninth Circuit affirmed the district court's dismissal of the participant's § 1132(a)(3) because

all the relief the participant requested "under the equitable catchall was duplicative relief of [the] relief she sought under other sections of [§ 1132]." *Id.*

In response to Blue Cross's challenge to Scentsy's § 1132(a)(3) claim, Scentsy relies on Rule 8 and argues it may plead claims in the alternative. *See* Fed. R. Civ. P. 8(d) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones."). What is entirely unclear from the parties' briefing, however, is whether the request in Scentsy's § 1132(a)(3) claim for a constructive trust is duplicative of relief under § 1132(a)(2); why a constructive trust is necessary in lieu of monetary damages; and whether a constructive trust is an available equitable remedy under § 1132(a)(3). Because the parties have not adequately addressed these issues, the Court will allow Scentsy to proceed with its § 1132(a)(3) claim for equitable relief at this stage. Regardless, however, Scentsy is not entitled to a remedy under both sections if a remedy under § 1132(a)(2) is adequate. *See Castillo v. Metro. Life Ins. Co.*, 970 F.3d 1224, 1229 (9th Cir. 2020) (noting relief is not available under § 1132(a)(3) where Congress elsewhere provided adequate relief).

### 2.      ERISA Preemption of State and Common Law Claims

Blue Cross also moves to dismiss Scentsy's state law claims for breach of contract, breach of the covenant of good faith and fair dealing, breach of fiduciary duty, and insurance bad faith; it argues ERISA preempts these claims. (Dkt. 8-1 at pp. 11-13). ERISA's preemption provision is "deliberately expansive" and "designed to 'establish [employee benefit] plan regulation as exclusively a federal concern.'" *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45-46 (1987) (quoting *Alessi v. Raybesor-Manhattan, Inc.*, 451 U.S. 504, 523 (1981)). Indeed, ERISA's provisions "supersede any and all State laws insofar as they . . . relate to any employee benefit plan." 29

U.S.C. § 1144(a). "Congress used the words 'relate to' in § [1144(a)] in their broad sense." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 98 (1983). Under § 1144(a)'s "relate to" clause, ERISA preempts state and common law causes of action in two categories: those that have a "connection with" an ERISA-governed benefit plan, and those that have a "reference to" an ERISA-governed benefit plan. *Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 319-20 (2016) (state law); *Pilot Life*, 481 U.S. at 47 (common law).

Despite that ERISA ordinarily preempts all state law claims, Scentsy again argues that it may plead state law claims under Rule 8 as an alternative to its ERISA claims. (Dkt. 12 at pp. 15-17). *See* Fed. R. Civ. P. 8(d) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones."). Scentsy contends "a handful of issues" impact whether Scentsy's claims as a Plan sponsor arise under ERISA or under state law. (Dkt. 12 at p. 16). Specifically, it anticipates Blue Cross will eventually challenge ERISA's application to this dispute by asserting, for example, that Blue Cross is not a "named fiduciary" or "a functional fiduciary," that the 2020 ASA is not a plan document, and that the 2021 Excess Loss Contract is not a plan document. (*Id.*).

Based on these arguments, Scentsy contends Rule 8 authorizes it to plead state law claims in the alternative, and it cites numerous cases in support. *See, e.g.*, *Efimenko v. Catalina Mktg. Corp. Grp. Life Plan*, No. 21-cv-01550-HSG, 2022 WL 799081, *5 (N.D. Cal. Mar. 16, 2022) ("Courts have permitted alternatively-pled claims to proceed at the motion to dismiss stage even in the context of ERISA, finding that Rule 8 protects plaintiffs from being 'forced to hazard a guess' between alternative theories before discovery . . . ."); *Delano v. Unified Grocers*, No. 2:19-cv-00225-TLN-DB, 2020 WL 903197, *4 (E.D. Cal. Feb. 25, 2020) ("[T]here has been no

determination as to whether ERISA applies . . . [so] it would be against the spirit of the Federal Rules to force Plaintiff to run a risk which [Rule 8(d)(2)] is designed to alleviate."); *ILWU-PMA Welfare Plan v. Connecticut Gen. Life Ins.*, No. C 15-02965 WHA, 2015 WL 9300519, *8 (N.D. Cal. Dec. 22, 2015) ("It is premature to require plaintiffs to commit to a theory of liability at this early stage, without the benefit of discovery. It would be better to resolve the [ERISA] preemption question with a fully developed evidentiary record."); *Coleman v. Standard Life Ins.*, 288 F. Supp. 2d 1116, 1120 (E.D. Cal. 2003) ("In the ERISA context, in particular, there will often be good reason for alternatively pleading state and federal claims. . . . ERISA preemption often presents the sort of situation for which Rule 8's alternative pleading provision is designed emphasis original).

Blue Cross, however, neither addresses Scentsy's right to alternatively plead state law claims under Rule 8 nor disputes it will raise the defenses Scentsy anticipates. Rather, Blue Cross simply states that "while [Scentsy] alludes to possible defense [Blue Cross] might raise, these arguments do not amount to the unique circumstances that might warrant delaying a proper adjudication of Blue Cross's motion." (Dkt. 16 at p. 9). Because Blue Cross does not address Scentsy's argument that Rule 8 permits it to plead state law claims as an alternative to its ERISA claims, the Court denies Blue Cross's motion to dismiss Scentsy's state law claims, except for Scentsy's unjust enrichment claim.

### 3.    Unjust Enrichment

Blue Cross moves to dismiss Scentsy's claim for unjust enrichment "because the subject matter in dispute is governed by a written agreement," which forecloses a claim for unjust enrichment. (Dkt. 8-1 at p. 13). Generally, a claim for unjust enrichment is impermissible where

an enforceable contract exists between the parties and covers the same subject matter. *Vanderford Co. v. Knudson*, 165 P.3d 261, 272 (Idaho 2007); *Thomas v. Thomas*, 249 P.3d 829, 836 (Idaho 2011). In other words, "restitutionary remedies are subordinate to contractual remedies." *Asher v. McMillan*, 503 P.3d 172, 178 (Idaho 2021).

Scentsy argues its unjust enrichment claim should be permitted to proceed as an alternative to its breach of contract claim at this stage of litigation. (Dkt. 12 at p. 17). In so arguing, Scentsy relies upon *MWI Veterinary Supply Co. v. Wotton*, No. 1:12-CV-00055-BLW, 2012 WL 2576205, at *9 (D. Idaho July 3, 2012). In *MWI Veterinary Supply Co.*, the court allowed claims for unjust enrichment and breach of contract to proceed where the moving party had not admitted the contracts were enforceable. 2012 WL 2576205, at *9. The court noted that "under these circumstances," unjust enrichment may be pled as an alternative theory of relief. *Id.*

In contrast, however, Blue Cross acknowledges a written contract governs the parties' dispute in this case. (Dkt. 8-1 at p. 13; Dkt. 16 at p. 10). Although Blue Cross and Scentsy disagree which contract applies, Blue Cross does not argue the applicable contract is unenforceable. Rather, Blue Cross asserts "the subject matter in dispute is governed by a written agreement." (Dkt. 8-1 at p. 13). Accordingly, the Court dismisses Scentsy's unjust enrichment claim. *See Big Sky W. Bank v. Jensen Fam. Inv. Co.*, LLC, No. 4:12-CV-00617-BLW, 2013 WL 4046309, at *6 (D. Idaho Aug. 7, 2013).

## IV.  ORDER

**IT IS HEREBY ORDERED:**

1.    Defendant's Motion to Compel Arbitration, or in the Alternative to Partially Dismiss and Stay (Dkt. 8) is **DENIED in part** and **GRANTED in part**. The Court denies

Defendant's motion to compel arbitration. The Court grants Defendant's motion to dismiss Plaintiff's claim for unjust enrichment. The Court denies the balance of Defendant's motion to dismiss.

DATED: August 28, 2024

Amanda K. Brailsford
U.S. District Court Judge